James S. Bkown, J.
In this foreclosure action plaintiffs move for an order confirming the Referee’s report of sale and directing the Referee to pay to plaintiffs the sum of $3,285.95 now held by the Referee as part of the proceeds of the sale and also for the payment to plaintiffs of the sum of $629.62 from the receiver’s funds, this latter sum being the amount of plaintiffs’ deficiency over and above the said $3,285.95. Defendant United States of America cross-moves for an order directing the Referee to correct his report in conformity with its objections and to pay to it the said sum of $3,285.95. A request is also made by the Referee for an additional allowance in the sum of $500 for additional services performed in this matter.
From the filed papers it appears that pursuant to a judgment of foreclosure and sale entered on October 19, 1956, the Referee sold the foreclosed premises to one Slavit for the sum of $13,-500. The judgment of foreclosure and sale did not provide that the purchaser be allowed a credit for the payment of any real estate taxes, assessments and water rates but rather that the Referee was to make such payment. The terms of sale, however, provided for such credit. The purchaser paid the real estate taxes, etc., in the sum of $3,285.95 and received a credit toward the purchase price for such payment. On January 21, 1957 title was closed and a deed delivered to the purchaser. By order dated February 20, 1957 the judgment of foreclosure and sale was amended nunc pro tunc to conform to the terms of sale relating to the payment of taxes. This order further provided that the issue of the Federal tax liens was to be passed upon on the motion to confirm the Referee’s report of sale. Upon appeal the order was affirmed by the Appellate Division (Rikoon v. Two Boro Dress, 3 A D 2d 864).
The defendant United States of America served and filed objections to the Referee’s report of sale in allowing priority to the City of New York for its real 'estate taxes, assessments and water rates as against liens relating to unpaid social security assessments levied by the United States against the owner of the foreclosed premises.
*593 The Referee, after deducting from the purchase price of $13,500 the afore-mentioned credit of $3,285.95, received the balance of $10,214.05 in cash. After deducting from that $400 for his fee as Referee and $14.85 for revenue stamps on the deed, he had a balance of $9,799.20. Thereafter, pursuant to an order of the court dated June 27, 1957, the Referee paid to the plaintiffs from this amount the sum of $6,473.32 and paid to himself $39.93 for disbursements, leaving a balance of $3,285.95, the amount in dispute. This is claimed by the United States Government as surplus. A further sum of $1,263.17, the balance of the receiver’s account, was also placed on deposit to the credit of the action.
The basic issue involved is whether the $3,285.95 is to be deemed an expense of sale as provided by sections 1082 and 1087 of the Civil Practice Act or surplus upon which the Federal liens attached because of their priority in time as against the liens of the City of New York. The liens in question being statutory, the pertinent sections of the statutes involved reveal the following: section 6321 of title 26 of the United States Code provides that unpaid Federal taxes are a lien in favor of the United States Government from the date of the assessment and remain so until they are paid or become unenforcible by reason of the lapse of time (U. S. Code, tit. 26, § 6322), except as against mortgagees, pledgees, purchasers and judgment creditors, in which cases the Federal lien must first be filed (U. S. Code, tit. 26, § 6323). Section 172 of the New York City Charter provides that real estate taxes shall become liens when they become due and payable and shall remain so until paid. The semiannual installments of city taxes become due and payable on October 1 and April 1 of each year.
It is undisputed that the defendant United States of America having appeared in this action and the court having obtained jurisdiction of such defendant, the judgment of foreclosure and sale foreclosed any liens or claims against the property and such liens attached to the surplus money, if any, realized on the sale of the premises.
Defendant United States of America contends that the money paid to the City of New York for its taxes, etc., was out of surplus and that therefore the City of New York was given an unlawful priority over its liens. As its authority defendant cites United States v. City of New Britain (347 U. S. 81). In that case the court held that where tax liens are concerned the rule of ‘‘ first in time, first in right ’ ’ must be applied and that a prior lien gives a prior claim which is entitled to. prior satisfaction out of the property it binds, unless the lien be intrin *594 sically defective. The Connecticut statutes which were reviewed by the Supreme Court provided that real estate tax liens ‘ ‘ shall take precedence of all transfers and incumbrances ” (p. 83) in any manner affecting the property subject to the lien. The funds available in the City of New Britain case were insufficient to pay all claimants in full and the Superior Court of Connecticut directed that the expenses, the city liens, the mortgages, the judgment lien and United States lien be paid in that order. The United States appealed from the judgment insofar as it gave the statutory liens of the city priority over those of the United States, but did not contest the State court’s direction that the expenses of sale and the mortgagee’s judgment be paid in full and given priority over its liens. The United States Supreme Court apparently recognized that expenses of the sale are to be paid along with the mortgage, and restricted the payment of the Government’s tax liens to funds in excess of the amount needed to pay the mortgage, which amount would, of necessity, include expenses and costs of the sale. The Connecticut statute did not, as does our Civil Practice Act, make the payment of city taxes an “ expense of the sale.” Section 1087 of the Civil Practice Act provides: ‘ ‘ Where a judgment rendered in an action to foreclose a mortgage upon real property directs a sale of the real property, the officer making the sale must pay out of the proceeds, unless the judgment otherwise directs, all taxes, assessments and water rates which are liens upon the property sold * * *. The sums necessary to make those payments and redemptions are deemed expenses of the sale within the meaning of that expression as used in any provision of this article.” (Italics supplied.) Section 1082 of the Civil Practice Act provides that ‘ ‘ In an action to foreclose a mortgage upon real property, if the plaintiff becomes entitled to final judgment, it must direct the sale of the property mortgaged or such part thereof as is sufficient to discharge the mortgage debt, the expenses of the sale and the costs of the action ”. Italics supplied.)
The contention that the term “ expenses of sale ” relates to taxes, etc., has been sustained by our courts. (Termansen v. Matthews, 49 App. Div. 163; Wesselman v. Engel Co., 309 N. Y. 27.)
It is undisputed that under section 6323 of title 26 of the United States Code, and also under the authority of the City of New Britain case (supra), the mortgagees herein were definitely entitled to priority over the United States Government and were entitled to be made whole.
*595 The judgment of foreclosure and sale directed the sale of the mortgaged property, or such part thereof “as is sufficient to discharge the mortgage debt; the expenses of the sale, and the costs of this action.” Payment of these items from the proceeds of the sale had priority. Anything left over was “ surplus ”, to be deposited in the designated bank by the Beferee for disbursement in the prescribed manner (Civ. Prac. Act, §§ 1082, 1087). As heretofore indicated, section 1087 directs the officer making the sale to pay out of the proceeds all taxes, assessments and water rates. The language used is “must pay out.” The Beferee is obliged to make such payments unless the order otherwise directs. The fact that the terms of sale provided that the purchaser pay the taxes, etc., and receive credit for such payment, varied neither the substance of the sections nor their purpose of protecting the purchaser at the sale and enabling him to obtain clear title. (Wesselman v. Engel Co., supra.) The judgment as amended nunc pro tunc, correcting the variance between the terms of sale and the original order,' conforms to the language of section 1087 of the Civil Practice Act. The term “ expenses of sale ” cannot be read so as to include taxes only when they are paid by the Beferee. One must look to substance rather than form. (York Mtge. Corp. v. Clotar Constr. Corp., 254 N. Y. 128; Metzger Co. v. Fay, 4 A D 2d 436.) It would be incongruous to hold that those sums are expenses of the sale when the Beferee pays them and not expenses of the sale when the purchaser pays them pursuant to an order of the court and in compliance with the sections of the Civil Practice Act.
The taxes, etc., being expenses of sale as provided by the sections of the Civil Practice Act, no surplus came into existence upon which the Federal liens could attach.
To sustain the contention of the United States Government would jeopardize the entire mortgage market, both present and future. Mortgagees would hesitate to advance funds needed in such business transactions in the fear that on a foreclosure they would not be made whole.
Furthermore, it would appear that the United States Government is barred from raising the present issue. It is well-settled law that the principle of res judicata operates to conclude by the judgment all the parties thereto and their privies with respect to any and all matters in issue or necessarily involved in the plaintiffs’ cause of action, as well as all matters of defense which were or might have been litigated therein, where the court had jurisdiction of the subject matter and the parties. The defendant United States of America *596 voluntarily and according to the statutes duly enacted by the Congress of the United States of America, submitted to the jurisdiction of this court. By so doing, it became bound by all the terms of the judgment. The judgment was conclusive as between the plaintiffs and all of the defendants. (Field v. Chronik, 190 App. Div. 501; King v. Franmore Equity Corp., 260 App. Div. 303.) The validity or legality of a provision in a judgment in foreclosure not raised by a party to the suit by timely motion or timely appeal cannot be raised collaterally where the court rendering the judgment had general jurisdiction of the parties and subject matter of the action. (Matter of Stilwell, 139 N. Y. 337.) No appeal was taken by the defendant United States of Aunerica from the original judgment of foreclosure and sale, nor did it perfect its appeal from the amended judgment, having apparently abandoned such appeal. Under the circumstances, the final judgment of foreclosure and sale as amended, not having been appealed from and no timely application to modify or vacate same having been made, the judgment is conclusive and res judicata as to all issues determined by it.
Accordingly, the motion of the plaintiffs is granted not only to confirm the Referee’s report of sale and to direct the Referee to pay the plaintiffs the sum of $3,285.95, but also directing the payment to the plaintiffs of the sum of $629.62 from the receiver’s funds now subject to the order of the court, in payment of the deficiency. The balance of the receiver’s funds amounting to $633.55, being surplus, is directed to be paid to the defendant United States of America. The cross motion by such defendant is otherwise denied.
The request for an additional allowance for the Referee is also denied because this court, in a similar application previously made by the Referee, denied such request (Rikoon v. Two Boro Dress, N. Y. L. J., June 24, 1957, p. 8, col. 1). No additional facts have been submitted warranting any change in such determination.
Settle order on notice.