Isadore Bookstein, J.
Plaintiffs move for summary judgment of foreclosure and sale of a mortgage held by them against certain real estate owned by defendant Ellenville Nurseries. & Greenhouses, Inc., hereinafter referred to as “ Nurseries ”. The mortgage sought to be foreclosed is a second mortgage, being inferior to a mortgagé held by defendant, Ellenville National *248 Bank, hereinafter referred to as “ Bank ’ ’, said defendant being the holder also of a fourth mortgage.
The defendant, United States of America, hereinafter referred to as ££ United States ”, is the only defendant which opposes the application for summary judgment. To put it more accurately, defendant1 ‘ United States ’ ’, while, for all practical purposes conceding that plaintiffs are entitled to a judgment of foreclosure, opposes the form of judgment which plaintiffs seek, and asks for a judgment which will adjudge priorities between its lien and those for State and local taxes.
It appears that defendant “ United States ” levied an assessment for "unpaid withholding tax and corporate income tax due from defendant “ Nurseries ”, the owner of the real property involved in this foreclosure action. Pursuant to sections 6321, 6322 and 6323 of the Internal Revenue Code of 1954 (U. S. Code, tit. 26, §§ 6321-6323), a notice of a lien in favor of the “ United States ” for such unpaid taxes was filed in the Ulster County Clerk’s office on October 24, 1958. Upon such filing, said unpaid taxes became a lien against the property of defendant, “ Nurseries ”, as of February 28, 1958, the date of the assessment, except as to a certain class, such as mortgagees and some others. As to them, such assessment did not become a valid lien until the date of filing of the notice, to wit, October 24, 1958, although no question seems to be present as to any such class (U. S. Code tit. 26, § 6323).
Plaintiffs ask for a judgment of foreclosure and sale. Neither in their prayer for relief, nor in their complaint, nor in the affidavit upon which this application is based, nor in their notice of motion do they ask that the property be sold subject to taxes. In their brief, they seek such relief.
Defendant “ United States ” takes the position that the judgment, if it provides for a sale subject to taxes and assessments, should provide for such sale only to the extent of State and local taxes that were liens, prior to the filing of its lien. It bases its contention on the premise that its lien is superior to State and local taxes which became liens after it filed its lien.
The defendants Joseph Rosenthal, Burton L. Shepard and Harry I. Cobern, individually and as co-partners, are the holders of a third mortgage in the principal sum of $6,000 recorded April 25, 1957; the defendant, Arthur B. Kelly, is the holder of a third mortgage in the principal sum of $6,000 recorded April 25, 1957, the two mortgages aforesaid by their respective terms being" in parity.
‘£ Bank ’ ’ also holds a fourth mortgage in the principal amount of $7,891.79, recorded July 8, 1957.
*249 Thus it will be seen that the two third mortgages and the fourth mortgage are prior in lien to the lien of ‘1 United States ’
Of course, under our State law, the local taxes are prior liens whenever they become due, whether before or after prior mortgages. So, if the contention of defendant, “ United States ” is correct, we would have the anomaly of its lien becoming a prior lien to the third and fourth mortgages to the extent that its lien was prior in point of time to subsequently accruing liens of local taxes, if the lien of ‘ ‘ United States ’ ’ must be treated and dealt with as superior to such subsequent liens for local taxes. This would necessarily result, as a good title could not be conveyed to a purchaser unless the State and local taxes were paid, regardless of what was done with the lien of the defendant, “ United States ”.
Incongruous as such a result would seem to be, it is a possible result, if the contention of the defendant “ United States ” is correct under the authorities cited by it.
Thus, in United States v. City of New Britain (347 U. S. 81) it was held that the lien of a Federal tax is superior to lien which subsequently came into being by way of a local tax. And, at first blush, this would seem to be ample authority, for the position taken by defendant, “United States ”. On closer analysis of that decision, the same result arrived at there is not inevitable here. In that case, the court was dealing with the “proceeds of sale”. Here we are not. Here Ave are dealing with the conditions under which a judicial sale is to be held.
In Aquilino v. United States (3 N Y 2d 511) the question was one of priority between the tax lien of the United States and some mechanics ’ liens.
United States v. Ringwood Iron Mines (151 F. Supp. 421; affd. 251 F. 2d 145 (C. A. 3d), certiorari denied sub nom. Borough of Ringwood, New Jersey v. United States, 356 U. S. 974) deals with the priority of a mortgage held by the United States over subsequent local government tax liens.
Southern Ohio Sav. Bank & Trust Co. v. Boce (165 Ohio St. 201) deals Avith the distribution of proceeds after a sale under a judgment of foreclosure.
United States v. Lord (155 F. Supp. 105) Avas an action by the United States to determine the priority of liens, including its oavii, and is to the same effect as the New Britain case (supra) that a tax lien of the United States has priority over subsequent local government tax liens.
In all of these cases, except the Lord case (supra) the question has arisen on the distribution of proceeds of sale after judgment qpd sqle, Moreover, I do not find that the statutes of Connec *250 tieut, New Hampshire and Ohio have a provision similar to our section 1087 of the Civil Practice Act, which so far as pertinent, reads as follows: “ Where a judgment rendered in an action to foreclose a mortgage upon real property directs a sale of the real property, the officer making the sale must pay out of the proceeds, unless the judgment otherwise directs, all taxes^ assessments and water rates which are liens upon the property sold,, and redeem the property sold from any sales for unpaid taxes, assessments or water rates which have not apparently become obsolete. The sums necessary to malee those payments are deemed expenses of the sale within the meaning of that expression as used in any provision of this article.” (Emphasis added.)
The power to have “the judgment otherwise direct” is exercised very infrequently. "When exercised, it is usually done where there are no liens, other than taxes, subsequent to the one being foreclosed. (Cf. Buffalo Savings Bank v. Victory, 17 Misc 2d 564.)
Section 1087 of the Civil Practice Act was not enacted for the benefit of State or local governments. Rather it was enacted to protect purchasers at judicial sales so that they could get clear titles.
As stated by the Court of Appeals in Wesselman v. Engel Co. (309 N. Y. 27, 30) with reference to section 1087 of the Civil Practice Act: “It merely provides that taxes and assessments ‘ which are liens upon the property sold * * * are deemed expenses of the sale within the meaning of that expression as used in any provision of this article.’ * * * The purpose of this section is to protect, not the mortgagee, but the purchaser on- a foreclosure sale, who is entitled to a clear title * * *. ín short, it directs the referee to pay out of the proceeds of sale unpaid taxes and assessments so that he can give title free of such then existing liens.” (Emphasis supplied.)
Plaintiffs also argue that State and local taxes paid by a mortgagee become part of the mortgage debt. This is so under subdivision 3 of section 254 of the Real Property Law, as well under the usual clause in a mortgage to that effect. (See, also, Central Hanover Bank & Trust Co. v. Roslyn Estates, 266 App. Div. 244.)
It does not appear that plaintiffs have paid any such State or local taxes. It does appear, however, that defendant “ Bank ” has. Defendant “ United States ” contends that only to the extent of those paid and which were liens prior to the filing of its lien do such payments have priority, that as to *251 any such payments of local or State tax liens which became liens subsequent to the filing of its lien, its lien is entitled to priority.
In the New Britain case (347 U. S. 81, supra) that question was raised by the State, There it was argued that the State and local taxes could have been paid by the mortgagee, with the amount so paid^becoming part of the mortgage lien and that the Federal tax lien would therefore be invalid as to such amount by virtue of the United States Code (tit. 26, § 3672). The Supreme Court in that case in a footnote as page 87 said: “ We need not now pass upon the merits of this suggestion since the situation is not presented by the record in this case. ’ ’
In other words, the Supreme Court left that question open where, as here, a mortgagee actually did pay such taxes.
If the contention of defendant “United States ” is correct, we could here have the anomalous situation where its lien would become superior to the liens of the third and fourth mortgagees, even though it was subsequent to them in time of filing and recording, despite the provisions of section 3672 of title 26 of the United States Code. It is inconceivable that the Congress intended any such result.
However, in United States v. Christensen (269 F. 2d 624) decided August 3, 1959, the United States Circuit Court of Appeals for the Ninth Circuit, expressly held that local taxes paid by a prior mortgagee, which taxes became liens subsequent to the filing of the Federal tax lien do not have priority over the Federal tax lien, despite State law permitting a mortgagee to pay such taxes and add them to the debt, secured by his mortgage. This, then, would seem to dispose of the question left open in the New Britain case (supra) at least at the level of the Circuit Court of Appeals. Since the relative priority of a Federal tax lien is always a Federal question, State courts are normally bound by the decisions of the Federal courts on that question.
The first mortgagee “ Bank ” has paid local taxes as follows:
Village of Ellenville, village tax, which became a lien on or about June 1, 1958 in the amount of $489.42 paid on January 28, 1959.
Ellenville School District, school tax, which became a lien on or about September 1, 1958 in the amount of $331.40 paid on May 7,1959.
Town of Wawarsing, town tax, which became a lien on or about January 1, 1959 in the amount of $155.22 paid on May 7, 1959.
All of these were paid after the Federal tax lien had been filed. Some of them were liens before the Federal tax lien was filed.
*252 Their status becomes a serious problem, since plaintiffs cannot in this action affect the first mortgagee, “Bank”, and any purchaser at the sale under the judgment of foreclosure in this action would of necessity have to know the amount of “ Bank’s ” prior lien, as such amount would have to figure in any bid. As to any and all of the parties to this action or.as to any purchaser, the amount of “ Bank’s ” lien has to be treated as the balance of principal and interest due on its mortgage, and also the amount of taxes paid by it, regardless of any question which may exist between “United States” and “Bank” as to their respective priorities so far as those taxes paid by ‘ ‘ Bank ’ ’ are concerned. Thus it can readily be seen that where a state of facts exists, such as exists here, chaos and havoc can be created in the holding of judicial sales in this State, by sustaining the contention advanced by “ United States ”.
As to local and State taxes which are liens at the time of sale by a Referee under the judgment of foreclosure and s'ale, regardless of whether they became liens before or after the filing of the lien of defendant, ‘ ‘ United States ’ ’, such payment, while indirectly constituting the payment of taxes, directly is the payment of “ expenses of sale ”, under our statute. They are in the same class as the referee’s fees, and the advertising costs and other expenses of sale. Such expenses have priority over everything.
It was so held in Rikoon v. Two Boro Dress (9 Misc 2d 591) modified only as to local taxes accruing after sale by the referee (8 A D 2d 986 [2d Dept.], reargued 9 A D 2d 783).
While Dunkirk Trust Co. v. Dunkirk Laundry Co. (17 Misc 2d 298) is to the contrary, it must be deemed overruled by the Bikoon case (supra). Moreover, in the Dunkirk case (supra) the question of local taxes being deemed expenses of sale seems not to have been raised or considered.
In Metropolitan Life Ins. Co. v. United States (9 A D 2d 356, 358), the Appellate Division, First Department, took a dim view of the Bikoon case (supra). It said that the determination in that case ‘1 was predicated * * * on a different set of facts. Even if we were to assume that Bikoon is precisely applicable to the situation here, we can neither adopt nor follow the rule.”
Thus we have the Appellate Division of the First and Second Departments in direct conflict on one of the precise questions presented here. There is no decision on the question in the Third Department.
This case, moreover, presents a state of facts not present in either Rikoon or Metropolitan Life Ins. Co. or Christensen *253 cases (supra). Here we are confronted with third and fourth mortgages, whose liens are concededly superior to that of ‘1 United States ” but whose mortgages, under State law, are subordinate to the lien of local taxes which accrued subsequent to the recording of such mortgages. To give effect to the contention of “United States” and the decision in Metropolitan Life Ins. Co. is in effect to give to the lien of “ United States ” priority over the lien of the third and fourth mortgages, even though they are prior thereto.
Such a result is inconceivable and is avoided by following the determination of the Second Department in Rikoon.
In Stadelman v. Hornell Woodworking Corp. (Commerce Clearing House U. S. Tax Cases, Vol. 59-1, § 9296 [U. S. District Court, Western District of New York, 1958]) the court expressly held that -section 1087 of the Civil Practice Act of the State of New York, by treating local taxes to be paid by the referee, as “ expenses of sale ” in effect gives priority to local taxes which have become liens after the filing of a Federal tax lien and that no State rule may -defeat the paramount right of the United States.
This, so far as I am aware, is the first pronouncement on the subject by a Federal court and, under the rule that the determination of a Federal tax question by a Federal court is binding upon State courts, would seem to be decisive of the question before this court.
However, there is more involved in the determination than merely a Federal tax question. Here there is also involved the interpretation and effect of a State statute, which, or its predecessor, was in existence before there was any such thing as a Federal income tax or social security tax.
In interpreting that statute, I feel constrained to follow the interpretation and purpose thereof as it was interpreted in Wesselman v. Engel Co. (309 N. Y. 27) and in Rikoon v. Two Boro Dress (9 Misc 2d 591, supra).
More especially is this so, where, as here, to follow the decision in Stadelman, is to give priority to the Federal tax lien, over the third and fourth mortgages, which concededly it does not have and which would be tantamount to taking property, without due process.
Accordingly, it is the determination of this court that all local taxes which are liens against the real property of “ Ellenville ” involved in this action are to be paid by the referee, as ‘ ‘ expenses óf sale ” and as such are superior to the lien of “ United States ”.
As to the taxes paid by ‘ ‘ Bank ” which cannot now be treated as “ expenses of sale ”, I have already indicated, on the sale, *254 the purchaser will have to buy subject to its first mortgage, which includes the taxes paid by it and such purchaser cannot question that item as being part of “ Bank’s ” first mortgage.
Even from an equitable standpoint, “United States” cannot quarrel with such result, since, if “Bank” had not paid them, they would have to be paid by the referee, in any event, as “ expenses of sale ”.
While it is true thai ‘ ‘ United States ’ ’ should not be thwarted in the collection of taxes due it, it is equally true that they should be paid by the person who owes them or out of any equity which he has in any property. They should not be made the personal obligation of strangers. If a sale produces a surplus, such surplus constitutes the equity of the delinquent taxpayer, and out of such surplus, 1 ‘ United States ’ ’ should be paid. Accordingly, the tax lien of ‘ ‘ United States ’ ’ must aAvait the sale and must be relegated to a surplus money proceeding. If the surplus is sufficient to pay the third and fourth mortgages and the lien of “United States”, the matter would become academic. If the surplus is insufficient to pay those mortgages in full, or if there is no surplus, the lien of the third and fourth mortgages, as well as that of “United States” unfortunately will be extinguished.
It must be borne in mind that in none of the cases cited by ‘ ‘ United States ’ ’ or which independent research has discovered, Avas there a factual situation presented, such as exists in this case.
Motion of plaintiffs for summary judgment granted, such judgment to provide for the payment by the referee to be appointed of all local taxes which are liens at the time of sale, as expenses of sale. Plaintiff’s application insofar as it seeks to have the sale by the referee made subject to taxes is denied. Application of “United States ” to have its priority over the local taxes paid by “ Bank ” or to be paid by the referee, denied. Judgment of foreclosure and sale is granted, the judgment to provide that out of the proceeds of sale, the referee shall pay all local taxes, as “ expenses of sale ”, and that such judgment shall provide that the equity of redemption of “ United States ” shall not be terminated until the expiration of one year from the date of sale. (See U. S. Code, tit. 28, § 2410.)
Submit order.